UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TOMMY BROWN,

    *Plaintiff*,

v.                                                                    CASE NO. 12-CV-15108

COMMISSIONER OF                                 DISTRICT JUDGE BERNARD A FRIEDMAN
SOCIAL SECURITY,                                  MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**[1]

**I.   RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence does not support the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **GRANTED**, that Defendant's Motion for Summary Judgment be **DENIED**, that the findings of the Commissioner be **REVERSED** and the case **REMANDED** for further proceedings under sentence four or six of 42 U.S.C. § 405(g).

**II.   REPORT**

    **A.   Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for Supplemental Security Income ("SSI")

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 8, 14.)

Plaintiff Tommy Brown was 43 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 6 at 72, 224.) Plaintiff's employment history includes work as a general laborer, cleaner, laundry worker, and dishwasher, each for only several months. (Tr. at 102.) Plaintiff filed the instant claim on February 14, 2006, alleging that he became unable to work on July 3, 2001. (Tr. at 72.) The claim was denied at the initial administrative stages. (Tr. at 37.) In denying Plaintiff's claims, the Commissioner considered "Schizophrenia, Paranoid [and] Other Psychotic Disorders" and "Affective Disorders" as possible bases for disability. (*Id.*) On February 5, 2009, Plaintiff appeared before Administrative Law Judge ("ALJ") Regina Sobrino, who considered the application for benefits *de novo*. (Tr. at 13-30, 224-46.) In a decision dated September 1, 2009, the ALJ found that Plaintiff was not disabled. (Tr. at 30.) Plaintiff requested a review of this decision on December 1, 2009. (Tr. at 10.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on September 21, 2012, when, after review of additional exhibits,[2] the Appeals Council denied Plaintiff's request for review. (Tr. at 2-4.)[3] On November 19, 2012, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

### B. Standard of Review

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for

---

[2]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

[3]The Appeals Council exhibits are not included in the administrative transcript. Plaintiff indicates that "[i]n an attempt to get the Appeals Council to reverse the decision of ALJ Sobrino, counsel for the Plaintiff took the post Hearing deposition of Dr. C.A.N. Rau," who is one of Plaintiff's treating psychiatrists. (Doc. 8 at 11.) Plaintiff included a transcript of the deposition with his motion for summary judgment. (Doc. 9.)

exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations

3

based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

Judicial review of the ALJ's decision is direct, "but we play an 'extremely limited' role." *Simila v. Astrue,* 573 F.3d 503, 513-14 (7th Cir. 2009). "We do not actually review whether [the claimant] is disabled, but whether the Secretary's finding of not disabled is supported by

4

substantial evidence." *Lee v. Sullivan*, 988 F.2d 789, 792 (7th Cir. 1993). Just as "'[n]o trial is perfect,'... no administrative hearing or opinion is either[;] thus, in analyzing an ALJ's decision, a reviewing court is to look for 'fatal gaps or contradictions' and not 'nitpick' in search of essentially meaningless missteps." *Masters v. Astrue*, 818 F. Supp. 2d 1054, 1965 (N.D. Ill. 2011).

### C. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

>   Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
>   Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.    ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since July 3, 2001, the alleged onset date. (Tr. at 19.) At step two, the ALJ found that Plaintiff's schizophrenia, an affective disorder, a personality disorder, and a substance addiction disorder were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 19-20.) At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (Tr. at 29.) The ALJ also found that Plaintiff was a younger individual (i.e., between the ages of 18 and 44) on the date the application was filed. (*Id.*) At step five, the ALJ found that Plaintiff could perform a full range of work at all exertional levels with the nonexertional limitations that

he is limited to performing simple, routine, repetitive tasks, that he should not need to make independent judgments about work tasks, and that he should not perform work that requires dealing with the public or working in tandem. (Tr. at 19-29.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 30.)

### E. Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff has been treated for paranoid schizophrenia since at least 2005. Plaintiff's treatment has included times when he was incarcerated for drunk driving and for resisting and obstructing police officers. (Tr. at 127-58.)

On May 16, 2005, Eugene O. Seals, M.D., diagnosed paranoid schizophrenia and noted that Plaintiff was "not resting well at night" and that "he can hear people talking to him, but no hallucinations. He could not identify who these people were, they may have been just thoughts." (Tr. at 165.)

On September 28, 2005, it was noted that Plaintiff "admits that he is hearing voices but states that he is in a spiritual battle and can handle it" and that the "entire interview was peppered with religious references." (Tr. at 137.)

On February 22, 2006, it was noted that Plaintiff's prescription medication, "Seroquel [was] working somewhat but [Plaintiff was] still hearing obtrusive voices." (Tr. at 160.)

On May 5, 2006, Plaintiff was examined at the request of Disability Determination Services ("DDS") by Nathalie Menendes, Psy. D. (Tr. at 171-75.) It was noted that Plaintiff was living in a homeless shelter at the time. (Tr. at 172, 174.) Dr. Menendes diagnosed "Schizophrenia, paranoid type," "Depressive Disorder NOS," "Alcohol Abuse," "Cannabis Abuse," and "Cocaine Abuse in full sustained remission"; she assessed a GAF score of 35. (Tr. at 174.)

A Psychiatric Review Technique was completed by Bruce Douglass on June 5, 2006. He diagnosed "Schizophrenic, Paranoid" (Tr. at 178), "Depressive Dis[order] NOS" (Tr. at 179), and "Substance Addiction Disorders." (Tr. at 184.) Plaintiff was found to be moderately limited in activities of daily living, in maintaining social functioning, and in maintaining concentration,

7

persistence or pace. (Tr. at 186.) A Mental Residual Functional Capacity ("RFC") Assessment was completed on the same day by Mr. Douglass. (Tr. at 185-92.)

Plaintiff received treatment at Saginaw County Community Mental Health in 2008 and 2009. (Tr. at 194-203, 207-17, 220-23.)

Plaintiff was also treated by C.A.N. Rao, M.D., Psychiatrist.[4] Dr. Rao's annual evaluation dated November 21, 2008, diagnosed "Paranoid Schizophrenia," "Alcohol and Drug Dependence in Remission," and "Antisocial Personality Disorder." (Tr. at 205.) Dr. Rao assessed a GAF score of 50. (*Id*.)

At the administrative hearing, Plaintiff appeared without the assistance of counsel. The ALJ asked Plaintiff whether he knew that "sometimes a person will represent someone for no charge," to which Plaintiff responded, "Yes, ma'am." (Tr. at 227.) The ALJ continued and explained that "[o]ther times there may be a charge but it's limited to a certain amount and it's only paid after a person gets benefits," to which Plaintiff responded, "Um-huh." (*Id.*) The ALJ then asked whether Plaintiff wanted to continue without a legal representative and Plaintiff responded, "I had contacted somebody but I don't know if they had some time to do it so they said it would take two or three months or something to, to help me. So I, you know, here to appeal it so I ain't want to miss it so –." (*Id.*) The ALJ then asked, "So you were in touch with someone to represent you but they told you it – did they tell you they would represent you?" and Plaintiff responded, "Yeah. They, they – yes, ma'am." (*Id.*)

The ALJ next asked whether Plaintiff wanted to have the hearing without a representative or wanted it postponed to continue to look for a representative, to which Plaintiff responded, "I don't know, ma'am. I – which would be the best for me I guess?" (*Id.*) The ALJ stated, "That's something that only you can decide. As I said you don't have to have a representative but you have a right to have one if you, if you find one. It is true that not, it's not always the case a person can find a representative because you have to want one –" at which point Plaintiff stated "Yes" and

---

[4]Dr. Rao is also phonetically referred to as "Rau" and "Raul" in the record, but those instances will be corrected to Rao in this R&R.

8

the ALJ finished with "– and they have to want to be hired." (Tr. at 227-28.) Plaintiff responded with "um-hum" and the ALJ stated, "So it's not something that anyone can decide but you." (Tr. at 228.) Plaintiff then responded, "Right. Well we can have this hearing. I'm here now, ma'am, I guess we can go on and I guess." (*Id.*) The ALJ then asked again whether Plaintiff wanted to proceed with the hearing without a representative and Plaintiff responded, "Yes, ma'am." (*Id.*)

In response to questions from the ALJ, Plaintiff testified that he hears voices "[p]retty much every day." (Tr. at 234-35.) When asked whether medications help, Plaintiff responded, "[i]t helps me to cope with it, to deal with it." (Tr. at 235.) In response to the question whether he still hears voices even when on the medication, Plaintiff stated, "Yes, ma'am." (*Id.*)

Plaintiff's case manager, Kerry Spitz of Community Mental Health Psychological Services, testified. (Tr. at 237-39.) Ms. Spitz testified that she sees Plaintiff twice a week, provides transportation to medical appointments, and helps him get the services that he needs. (Tr. at 237.) Ms. Spitz also stated that she would help Plaintiff obtain his records from Dr. Rao's office. (Tr. at 239.)

The ALJ asked Plaintiff how long he had been seeing Dr. Rao for psychiatric care and Plaintiff responded that "it's been a number of years." (Tr. at 231.) The ALJ noted that the last treatment record she had in the record was from "February 2006, two years ago." (*Id.*) She asked whether Plaintiff had been treated by Dr. Rao since that date and Plaintiff responded, "Yes, ma'am." (*Id.*) The ALJ asked Plaintiff, "Did you ask your doctor to have the records of treatment so that you could send them here or bring them here?" (Tr. at 232.) Plaintiff responded, "I'm not sure, ma'am. I, I don't know how to – ." (*Id.*) The ALJ then indicated that she would give Plaintiff "some envelopes that you won't have to put stamps on" so "[y]ou can put your records in these envelopes, put them in a mailbox, [and] they will come here [because] I want to see the records of your treatment since February 2006." (*Id.*)

The ALJ asked the vocational expert ("VE") to assume a person with Plaintiff's background who

9

> is limited to doing work that's simple, routine and repetitive. The person should not need to deal with the general public, the person cannot perform jobs that require working in tandem and by that I mean that although a coworker may leave off materials and pick them up, there could be a brief exchange of information. There shouldn't be a need to have another worker there to complete specific job tasks that the individual is responsible for completing and there should be no need to make independent judgments about work tasks.

(Tr. at 242.) The VE responded that such a person would not be able to perform any of Plaintiff's past relevant work but could perform the 63,000 industrial cleaner, 5,225 farm laborer, and 5,835 groundskeeper jobs available in Michigan. (Tr. at 243-44.) If the person required no exposure to hazards in the workplace, there would still be 1,700 production inspection and 6,700 hand packer jobs available. The VE further indicated that her testimony was consistent with the Dictionary of Occupational Titles ("DOT"). (Tr. at 244.)

At the end of the hearing, when the ALJ asked how long it would take to acquire the records from Dr. Rao, Ms. Spitz indicated that she could "get it in a week." (Tr. at 244.)

**F.     Analysis and Conclusions**

**1.     Legal Standards**

The ALJ found that Plaintiff could perform a full range of work at all exertional levels with nonexertional limitations. (Tr. at 19-29.)

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

**2.     Substantial Evidence**

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 8.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

10

Specifically, Plaintiff contends that the ALJ failed to ensure a full and fair administrative record where Plaintiff was not represented by counsel. (Doc. 8 at 14-18.) In addition, Plaintiff seeks to submit the evidence he presented to the Appeals Council, i.e., that a remand under sentence six of 42 U.S.C. § 405(g) is necessary to obtain a complete medical record. (*Id.*) Plaintiff also argues that the ALJ's decision is not supported by substantial evidence, especially in light of Plaintiff's low GAF score of 35. (*Id.* at 18.)

I again note that the Appeals Council exhibits are not included in the administrative transcript, but Plaintiff indicates that "[i]n an attempt to get the Appeals Council to reverse the decision of ALJ Sobrino, counsel for the Plaintiff took the post Hearing deposition of Dr. C.A.N. Rao," who is one of Plaintiff's treating psychiatrists. (Doc. 8 at 11.) Plaintiff included a transcript of the deposition and supporting medical records with his motion for summary judgment. (Doc. 9.) Plaintiff also alleges that "Dr. Rao confirmed that Mr. Brown is schizophrenic and meets at least one, and possibly more, of the Secretary's Listings," i.e., "Listing 12.03, 12.04, 12.06 and/or 12.08." (*Id.*)

### a. Full and Fair Record

As discussed below, I suggest that the colloquy between the ALJ and Plaintiff does not reveal a knowing and intelligent waiver of the right to representation. "Even if a waiver is not knowing and voluntary, however, a claimant must show that [he] suffered prejudice because [he] was unrepresented, 'such as a failure by the ALJ to fully develop the administrative record.'" *Smith v. Comm'r of Soc. Sec.*, No. 1:11-cv-296, 2012 WL 7009808, at *6 (E.D. Tenn. Nov. 6, 2012) (citations omitted). Therefore, I suggest that the waiver issue is properly subsumed by the issue of whether the ALJ failed to fully develop the record and whether Plaintiff was prejudiced by any failure.

The "burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) (citing 20 C.F.R. §§ 416.912, 416.913(d)). "Only under special circumstances, when a claimant is without counsel,

11

not capable of presenting an effective case, and unfamiliar with hearing procedures does the ALJ have a special duty to develop the record." *Rise v. Apfel, Comm'r of Soc. Sec.*, No. 99-6164, 2000 WL 1562846, at *2 (6th Cir. 2000) (citing *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983)).

"Where a claimant seeking judicial review argues that the ALJ failed to fully and fairly develop the record, a court will remand only if the claimant can demonstrate that he was prejudiced . . . . To establish prejudice, the claimant must point to specific facts that the ALJ did not consider and show that those facts would have been relevant to the ALJ's determination." *Czibor v. Astrue*, No. 12C 1678, 2012 WL 4361554, at *7 (N.D. Ill. Sept. 20, 2012) (citing *Nelms v. Astrue*, 553 F.3d 1039, 1098 (7th Cir. 2008)). Mere conjecture is insufficient. *Binon v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994).

In the instant case, I suggest that the record establishes that Plaintiff was without counsel, was not capable of presenting an effective case, and was unfamiliar with hearing procedures such that the ALJ was obligated to fully develop the record. I first suggest that Plaintiff's responses regarding attorney representation show that he was neither capable of presenting an effective case nor was he familiar with the process when he responded, "I had contacted somebody but I don't know if they had some time to do it so they said it would take two or three months or something to, to help me. So I, you know, here to appeal it so I ain't want to miss it so –." (Tr. at 227.) It appears that Plaintiff was under a mistaken impression that his appeal would be adversely effected by the delay in obtaining counsel. In addition, when asked whether he wanted to proceed with the hearing without counsel, Plaintiff responded, "I don't know, ma'am. I – which would be the best for me I guess?" (*Id.*) After the ALJ informed Plaintiff he had to make the decision himself, Plaintiff responded, "Right. Well we can have this hearing. I'm here now, ma'am, I guess we can go on and I guess." (Tr. at 228.) I suggest that Plaintiff's equivocation shows he did not knowingly waive his right to have representation and that he was not able to advocate for himself.

In addition, not only did Plaintiff present with a longstanding diagnosis of paranoid schizophrenia, but also he testified that he hears voices "[p]retty much every day." (Tr. at 234-35.)

12

The medical evidence of record also shows a continuing pattern of Plaintiff hearing voices, i.e., having delusions and hallucinations. (Tr. at 137, 160, 165.) Finally, when asked whether he had asked for records from Dr. Rao, Plaintiff responded, "I'm not sure, ma'am. I, I don't know how to – ." (Tr. at 232.) Here, Plaintiff clearly expressed that he does not know how to gather information and prepare, let alone present, evidence at the hearing. Although Plaintiff's caseworker indicated that she would help him acquire the records, the records never were submitted until Plaintiff acquired counsel and his counsel submitted Dr. Rao's deposition and supporting medical records to the Appeals Council. (Tr. at 244.)

I suggest that Plaintiff's testimony at the hearing as detailed above, and his failure to follow through in obtaining records, even with the purported help of his caseworker, indicates that he was not capable of presenting an effective case, and was unfamiliar with hearing procedures such that the ALJ was obligated to fully develop the record.

I further suggest that Plaintiff has established prejudice sufficient to warrant remand. *See Czibor, supra.* Plaintiff points to "specific facts that the ALJ did not consider" and, I suggest, he has shown that "those facts would have been relevant to the ALJ's determination." *Id.* Plaintiff proffers the deposition of Plaintiff's treating psychiatrist, Dr. Rao, taken on October 15, 2012, and medical records of treatment. (Doc. 9.) Dr. Rao testified that "[s]chizophrenia is a lifelong mental illness, we can only make them somewhat better with the medications, there is no cure for it." (*Id.* at 12.) Dr. Rao further testified that "one of the quote, symptoms of schizophrenia, they don't usually trust people and they don't want to . . . take medications and especially in [Plaintiff's] case, he doesn't have any support and all that." (*Id.* at 14.) He went on to explain that Plaintiff "has a problem taking medications, realizing that he need[s] treatment and sometimes he also abuses other drugs and drinking to cope [with] these symptoms [delusions and hallucinations] or make more exaggerated and end up in the hospitals." (*Id.*) Dr. Rao indicated that because Plaintiff has paranoid schizophrenia, "he associate[s] himself as though people are against him, he has problem[s] dealing with society in general or making friends or even getting along with his own family members." (*Id.* at 18.)

13

Dr. Rao also testified that schizophrenics' "symptoms will get worse" partially because "they don't sleep" well. (*Id.*) Dr. Rao stated that Plaintiff hears "voices that are telling him to sometimes do bad things and also sometimes not take his medications" and that Plaintiff "also has problems sleeping and he also has a labile mood, sometimes he get[s] very upset . . . [and] he's also suspicious talking to others thinking as though they are going to do something that he does not like and he also has some periods of confusion now and then" and he "loses associations and he may say one thing one time and he [will] say the opposite [thing] the second time we ask him the same thing." (*Id*. at 16.)

As to Plaintiff's personality disorder, Dr. Rao indicated that Plaintiff has "end[ed] up in jail" because of his anti-social and emotional problems. (*Id*. at 20.) Dr. Rao indicated that schizophrenics "[m]ay be able to do little things under supervision, but usually they have problems maintaining any regular job or any getting good skills to get a job even." (*Id*. at 26-28.) The doctor concluded that "it isn't likely that he's able to maintain a regular job and gain job skills," but that it would be helpful to do "some kind of work" but "not for a living . . . ." (*Id*. at 28.)

I suggest that this evidence would have been relevant to the ALJ's determination such that Plaintiff has established prejudice sufficient to warrant remand. *See Czibor, supra.* Although Plaintiff was diagnosed with substantial mental impairments that the ALJ found to be severe, I suggest that the lack of medical evidence made it impossible for the ALJ to properly assess the effects those mental impairments have on Plaintiff's RFC. I therefore suggest that the case should be remanded for a new hearing. *See Jordan v. Comm'r of Soc. Sec.*, No. 10-14786, 2012 WL 86737, at *9-10 (E.D. Mich. Jan. 11, 2012) (where ALJ failed to "inquire further" regarding the plaintiff's schizophrenia diagnosis or the symptoms it was producing, the plaintiff was unrepresented, and the ALJ did not fully inquire whether the plaintiff understood that right or was intelligently waving that right, the ALJ failed in his duty to provide a full and fair hearing).

    **b.**    **Remand**

Having suggested that the case be remanded for a new hearing, the next question is whether that remand should be under sentence four or sentence six of 42 U.S.C. § 405(g). Generally,

remands ordered because the ALJ failed to fully develop the record are made under sentence four. *See, e.g., Jordan*, 2012 WL 86737 at *10; *Vaca v. Comm'r of Soc. Sec.*, No. 1:08-cv-653, 2010 WL 821656, at *7 (W.D. Mich. Mar. 4, 2010). The instant Plaintiff seeks remand under sentence six.

In *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171 (6th Cir. 1994), the court explained that

> [r]emands under both sentence four and sentence six of § 405(g) can involve the taking of additional evidence. Under sentence six, a district court, before making a final judgment, may order the Secretary to consider additional evidence because a party presents material evidence to the court that was not previously available. Under sentence four, the court makes a final judgment, affirming, reversing, or modifying the Secretary's decision and may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place.

*Id.* at 175 ("a remand pursuant to sentence four of § 405(g) is a post-judgment remand," as opposed to a remand "pursuant to sentence six of § 405(g), [which] is a pre-judgment remand").[5] Since I suggest that remand should be made in the instant case to remedy the defective record, I also suggest that remand under sentence four is most appropriate.

Alternatively, I suggest that remand under sentence six would also be appropriate. Sentence six of 42 U.S.C. § 405(g) allows the district court to remand in light of additional evidence without making any substantive ruling as to the merits of the Commissioner's decision, but only if a claimant can show good cause for failing to present the evidence earlier. *Melkonyan v. Sullivan*, 501 U.S. 89, 100, 111 S. Ct. 2157, 115 L. Ed. 2d 78 (1991). The Sixth Circuit has long recognized that a court may only remand disability benefits cases when a claimant carries his burden to show that "the evidence is 'new' and 'material' and 'good cause' is shown for the failure to present the evidence to the ALJ." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010). Evidence is only "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Id.* (citing *Foster*, 279 F.3d at 353). In addition, "such evidence is

---

[5]Other courts have questioned whether a remand under sentence four may include the taking of additional evidence where the requirements of sentence six are not met. *See, e.g., Jones v. Astrue*, 650 F.3d 772, 776 (D.C. Cir. 2011) (collecting cases and noting that the Supreme Court has not ruled on the issue).

'material' only if there is a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Foster*, 279 F.3d at 357.

"'Good cause' is shown for a sentence-six remand only 'if the new evidence arises from continued medical treatment of the condition, and was not generated merely for the purpose of attempting to prove disability.'" *Payne v. Comm'r of Soc. Sec.*, No. 1:09-cv-1159, 2011 WL 811422, at *12 (W.D. Mich. Feb. 11, 2010) (finding that evidence generated after the hearing and submitted to the Appeals Council for the purpose of attempting to prove disability was not "new").

In the instant case, Plaintiff would like to include the treatment records from the treating source and the deposition testimony of his treating psychiatrist, Dr. Rao. (Doc. 9.) The deposition evidence did not exist at the time of the hearing and, therefore, I suggest, is new. The medical records may not all be new but are proffered as an exhibit to the deposition and, thus, could arguably be considered new. I further suggest that the evidence could arguably represent a summary of ongoing treatment rather than evidence generated merely for the purpose of proving disability and, thus, good cause could be shown.

In addition, Plaintiff has proffered the evidence, and, as stated above, I suggest that the evidence is sufficiently relevant to establish prejudice and, correspondingly, sufficiently material to warrant a remand under sentence six. I therefore suggest that remand under sentence six would also be appropriate should the court find that remand under sentence four is not.

### 3.     Conclusion

Since I suggest that the ALJ failed to fully develop the record and that remand under sentence four of 42 U.S.C. § 405(g) is warranted, the additional issues raised by Plaintiff need not be addressed.

## III.    REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of

appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

s/ Charles E Binder
CHARLES E. BINDER
Dated: October 8, 2013   United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: October 8, 2013   By   s/Patricia T. Morris
Law Clerk to Magistrate Judge Binder